No. 110,766

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

IRA L. REED,
*Appellant*.

SYLLABUS BY THE COURT

1.

Individuals convicted of sexually violent crimes pursuant to K.S.A. 2013 Supp. 22-3717(d)(5) are subject to lifetime postrelease supervision under K.S.A. 2013 Supp. 22-3717(d)(1)(G).

2.

The Eighth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9 of the Kansas Constitution Bill of Rights contains similar protections. The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense.

3.

A categorical proportionality analysis under the Eighth Amendment does not require a review of the district court's factual findings. Instead, only questions of law are implicated. There are three subcategories of categorical proportionality challenges: first,

those concerning the nature of the offense; second, those concerning the characteristics of the offender; and third, a combination of the first two.

4.

There is a two-prong test used to evaluate a defendant's categorical proportionality challenge to a sentence. The court first considers objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by the standards elaborated by controlling precedents and by the court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

5.

To successfully challenge a sentence as categorically disproportionate, a defendant must show that, based on the characteristics of the class of offender to which the defendant belongs and the nature of the offense at issue, the sentencing practice is disproportionate with the offender's culpability.

6.

The "attempt" nature of a conviction does not remove it from the general category of sexually violent crimes subject to lifetime postrelease supervision.

7.

Lifetime postrelease supervision as applied to first time offenders serves legitimate penological goals because supervised release meets the same rehabilitative and deterrent objectives as it does for repeat offenders.

8.

Offenders who are guilty of attempting to commit a crime still have the intent required to commit it, so the penological objectives for lifetime postrelease supervision are the same as for those offenders who completed a crime.

9.

The goals of rehabilitation and incapacitation, in particular, are served by the imposition of lifetime postrelease supervision, given the propensity of sex offenders to reoffend. Individuals on postrelease supervision for a sex crime conviction are typically required to receive sex offender treatment, which serves an important rehabilitative component, and supervision keeps sex offenders under the watchful eye of probation officers, which protects society against future victims.

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed January 16, 2015. Affirmed.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., POWELL, J., and JOHNSON, S.J.

POWELL, J.: Ira L. Reed appeals part of his sentence for one count of attempted aggravated indecent liberties with a child, claiming lifetime postrelease supervision is cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. We disagree and affirm.

3

FACTS

On February 1, 2013, Reed, a first time offender with no criminal history, pleaded no contest to one count of attempted aggravated indecent liberties with a child (crime occurred between June and October 2009), a sexually violent crime pursuant to K.S.A. 2009 Supp. 22-3717(d)(2)(C) and (K), subject to mandatory lifetime postrelease supervision pursuant to K.S.A. 2009 Supp. 22-3717(d)(1)(G). At his sentencing hearing, Reed objected to the imposition of lifetime postrelease supervision, contending it constituted cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. The district court overruled Reed's objection and sentenced him to 32 months in prison and lifetime postrelease supervision.

Reed timely appeals.

WAS THE DISTRICT COURT'S IMPOSITION OF LIFETIME POSTRELEASE SUPERVISION A CATEGORICALLY DISPROPORTIONATE SENTENCE?

The Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9 of the Kansas Constitution Bill of Rights contains similar protections. The United States Supreme Court has declared that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 [1910]). The Kansas Supreme Court has described two proportionality challenges to sentences which are alleged to be violative of these constitutional provisions: (1) challenges that claim the sentence imposed is grossly disproportionate in light of all the circumstances of a

4

particular case, and (2) "'cases in which the Court implements the proportionality standard by certain categorical restrictions' . . . ." *State v. Gomez*, 290 Kan. 858, 864, 235 P.3d 1203 (2010) (quoting *Graham*, 560 U.S. at 59).

Reed's appeal falls under a categorical proportionality challenge because the district court was not called upon to determine factual findings pursuant to *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978) (establishing the three-part test used to determine whether sentence is prohibited under § 9 of the Kansas Constitution Bill of Rights). "[A] categorical proportionality analysis under the Eighth Amendment does not require a review of the district court's factual findings. Instead, only questions of law are implicated. This court has unlimited review over legal questions." *State v. Mossman*, 294 Kan. 901, 925, 281 P.3d 153 (2012) (citing *State v. King*, 288 Kan. 333, 355, 204 P.3d 585 [2009]; *State v. Martinez*, 288 Kan. 443, 449, 204 P.3d 601 [2009]).

Reed argues lifetime postrelease supervision is a categorically disproportionate punishment when imposed upon individuals convicted of trying and failing to indecently touch a child under the age of 14. Because this challenge rests on the unconstitutionality of the punishment for a class of criminals, the facts to the particular defendant's offense and any mitigating or aggravating circumstances personal to the defendant are irrelevant in deciding the legal issue. See *State v. Cameron*, 294 Kan. 884, 896, 281 P.3d 143 (2012).

The United States Supreme Court has recognized three subcategories of categorical proportionality challenges: first, those concerning the nature of the offense; second, those concerning the characteristics of the offender; and third, a combination of the first two. *State v. Williams*, 298 Kan. 1075, 1086, 319 P.3d 528 (2014). Our Supreme Court has included first time offenders in the nature of the offense subcategory. *Mossman*, 294 Kan. at 928. Reed would appear to fall under the third subcategory given

5

that he is a first time offender but focuses his arguments on the disproportionality of lifetime postrelease supervision in the context of an attempt to commit a sex crime.

There is a two-prong test used to evaluate a defendant's categorical proportionality challenge to a sentence:

"The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" *Graham*, 560 U.S. at 61.

However, when employing this test, the United States Supreme Court reminds us that

"[c]ommunity consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual. [Citation omitted.] In accordance with the constitutional design, 'the task of interpreting the Eighth Amendment remains our responsibility.' [Citation omitted.] The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. [Citations omitted.] In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate penological goals. [Citations omitted.]" 560 U.S. at 67-68.

Legitimate penological goals include (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. 560 U.S. at 71. To successfully challenge a sentence, our Supreme Court has stated a defendant must satisfy the second prong,

meaning a defendant "must show that, based on the characteristics of the class of offender [the defendant] belongs to and the nature of the offense at issue, the sentencing practice is disproportionate with the offender's culpability." *Williams*, 298 Kan. at 1087-88 (quoting *State v. Ruggles*, 297 Kan. 675, Syl. ¶ 4, 304 P.3d 338 [2013]).

First, Reed argues there is a national consensus against lifetime postrelease supervision for individuals with whom is he similarly situated. Other than Kansas, Nebraska is the only state that imposes mandatory lifetime postrelease supervision on individuals for a first time attempted indecent touching offense. See Neb. Rev. Stat. § 28-320.01 (2008); Neb. Rev. Stat. § 29-4003(1)(a)(xiv) (2008); Neb. Rev. Stat. § 83-174.03(1) (2008). Reed analogizes this circumstance to that in *Graham*, where the United States Supreme Court identified a national consensus against imposing a life without the possibility of parole sentence upon juveniles convicted of a nonhomicide offense when only 13 states prohibited such a punishment. See 560 U.S. at 67.

The rarity of lifetime postrelease supervision for an attempt crime appears persuasive, yet prior panels of our court have concluded the attempt nature of a conviction does not remove it from the general category of sexually violent crimes subject to lifetime postrelease supervision. See *State v. Hindman*, No. 110,261, 2014 WL 5312925, at *6-7 (Kan. App. 2014) (unpublished opinion) (attempted indecent liberties with a child subject to lifetime postrelease supervision), *petition for rev. filed* November 5, 2014; *State v. Russell*, No. 107,588, 2013 WL 3867180, at *4-6 (Kan. App. 2013) (unpublished opinion) (attempted aggravated solicitation of a child is subject to lifetime postrelease supervision), *rev. denied* 299 Kan. ___ (June 20, 2014); *State v. Barrera*, No. 104,664, 2013 WL 517581, at *9-10 (Kan. App. 2013) (unpublished opinion) (attempted rape is subject to lifetime postrelease supervision), *rev. denied* 297 Kan. 1248 (2013).

The defendant in *Barrera*, like Reed, argued there was a national consensus against the imposition of lifetime postrelease supervision for an individual convicted of

7

attempted rape. In concluding that attempt crimes are subject to lifetime postrelease supervision, the *Barrera* court engaged in the following analysis:

> "Our Supreme Court has adopted the Ninth Circuit Court of Appeals' position in *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir.), *cert. denied* 132 S. Ct. 188 (2011), in which the Ninth Circuit examined a categorical challenge to a sentence of lifetime postrelease supervision for a conviction of receipt of child pornography: "'[O]bjective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common."' See *Cameron*, 294 Kan. at 897; *Mossman*, 294 Kan. at 929. In both *Mossman* and *Cameron*, our Supreme Court quoted this language and applied the Ninth Circuit's reasoning. *Cameron*, 294 Kan. at 897-98; *Mossman*, 294 Kan. at 929-30.
>
> "Although both the *Mossman* and *Cameron* courts specifically identified the category at issue to be identical with the crime of conviction, the application of *Williams* to both Mossman['s] and Cameron's cases means that our Supreme Court is truly analyzing the category even more broadly—as 'sex offenses.' This is the only way in which the three crimes at issue in the three cases—aggravated indecent liberties with a child, aggravated indecent solicitation of a child, and receipt of child pornography—can undergo identical analysis for a categorical proportionality challenge under the Eighth Amendment. Moreover, our Supreme Court considered that 'several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes.' *Cameron*, 294 Kan. at 897; *Mossman*, 294 Kan. at 930. This statement, identical in both opinions, reinforces the belief that the category of offense actually being considered was 'sexually violent crimes' as a whole, not each crime individually." *Barrera*, 2013 WL 517581, at *9.

From this analysis, the panel in *Barrera* determined that individuals convicted of attempted rape, a sexually violent crime under K.S.A. 2011 Supp. 22-3717(d)(2), are properly subject to lifetime postrelease supervision because "there is no national consensus against lifetime postrelease supervision for perpetrators of sexually violent crimes; rather, it seems to be a widespread phenomenon." 2013 WL 517581, at *9. In *Russell*, another panel of this court subsequently relied on *Barrera*'s analysis when

holding that individuals convicted of attempted aggravated indecent solicitation of a child, a sexually violent crime under K.S.A. 22-3717(d)(2)(K), are properly subject to lifetime postrelease supervision. *Russell*, 2013 WL 3867180, at *4-5. Based on this rationale, because Reed was convicted of attempted aggravated indecent liberties with a child, a sexually violent crime under K.S.A. 2009 Supp. 22-3717(d)(2)(C) and (K), he is subject to lifetime postrelease supervision. *Cf.* K.S.A. 2013 Supp. 22-3717(d)(5); K.S.A. 2013 Supp. 22-3717(d)(1)(G).

Second, Reed urges us, in our exercise of independent judgment, to find his sentence unconstitutional because it does not serve the legitimate penological goals of retribution, deterrence, incapacitation, and rehabilitation. Specifically, with respect to retribution, Reed argues that attempt crimes do not necessarily involve a victim who was harmed and therefore society's need for retribution is considerably less than in cases involving a completed criminal offense.

However, "[s]ociety is entitled to impose severe sanctions on a . . . nonhomicide offender to express its condemnation of the crime and to seek restoration of the moral imbalance caused by the offense." *Graham*, 560 U.S. at 71. While we recognize that "lifetime postrelease supervision is a severe penalty, . . . it is not as severe as capital punishment or life without parole . . . ." *Berrera*, 2013 WL 517581, at *10.

The Kansas Supreme Court has appeared to reject the argument that a sex crime which did not involve a touching of or "harm" to a victim lessened society's need for the same level of punishment, relying upon the Ninth Circuit's holding that lifetime postrelease supervision for a sex crime which did not involve a touching was not disproportional. See *Williams*, 636 F.3d at 1233 (receipt of images of child pornography on his computer); *Williams*, 298 Kan. at 1089-90 (possessing an electronic recording depicting child engaging in sex acts). Also, in *Hindman*, the panel in that case noted that "offenders who are guilty of attempting to commit a crime still have the intent required to

9

commit it, so the penological objectives for lifetime postrelease supervision are the same" as those who completed the crime. 2014 WL 5312925, at *7.

Moreover, our Supreme Court has held that lifetime postrelease supervision as applied to first time offenders served legitimate penological goals because supervised release met the same rehabilitative and deterrent objectives as it did for repeat offenders. *Mossman*, 294 Kan. at 930. Perhaps most significantly, our Supreme Court in *Mossman* and *Cameron* determined that the goals of rehabilitation and incapacitation, in particular, are served by the imposition of lifetime postrelease supervision. *Cameron*, 294 Kan. at 898 (goals of rehabilitation and incapacitation "'are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again'" [quoting *Williams*, 636 F.3d at 1234]); *Mossman*, 294 Kan. at 930. For example, offenders on postrelease supervision for a sex crime conviction are typically required to receive sex offender treatment, which serves an important rehabilitative component, and supervision keeps sex offenders "'under the watchful eye of probation officers,'" which protects society against future victims. *Williams*, 636 F.3d at 1234.

While we recognize that lifetime postrelease supervision is a severe sanction, and we understand that reasonable people can take the view that such a sanction is too harsh, the legislature, in its considered judgment as representatives of the people, has determined such a sanction to be appropriate in such cases. Reed cannot show that the Kansas Supreme Court's rulings on this subject do not apply to his crime of attempted aggravated indecent liberties with a child, and we do not find that the imposition of lifetime postrelease supervision is categorically cruel and unusual punishment. By applying the same analyses and reaching the same conclusions as in *Mossman*, *Cameron*, and *Williams*, cases involving different sex crimes, our Supreme Court has suggested it would reject a challenge to the imposition of lifetime postrelease supervision regardless of the sex crime involved. Based on these precedents, Reed's sentence is not categorically disproportionate in violation of the Eighth Amendment.

10

Affirmed.

* * *

ATCHESON, J., concurring:  I concur in the result affirming the sentence imposed on Defendant Ira Reed.

11