NOT DESIGNATED FOR PUBLICATION

No. 114,749

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN M. ROTHSTEIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed December 2, 2016. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

*Per Curiam*: John M. Rothstein appeals the district court's decision to modify his postrelease supervision term from 36 months to lifetime following his convictions of two counts of attempted aggravated indecent liberties with a child. Rothstein first claims that lifetime postrelease supervision is an illegal sentence in his case due to a conflict between K.S.A. 2015 Supp. 22-3717(d)(1)(G) and K.S.A. 2015 Supp. 22-3717(d)(1)(D). Second, Rothstein claims that lifetime postrelease supervision constitutes cruel and/or unusual punishment. For the reasons stated herein, we reject both claims and affirm the district court's judgment.

1

On November 6, 2008, the State charged Rothstein with two counts of aggravated indecent liberties with a child, each count being an off-grid person felony punishable by a term of life imprisonment of not less than 25 years. The complaint alleged the crimes were committed between April 2008 and October 20, 2008. Rothstein was 32 years old at the time of the offenses. The complaint alleged that the victims, Rothstein's daughters, were under 14 years of age.

On March 2, 2009, pursuant to plea negotiations, Rothstein agreed to plead guilty to two counts of attempted aggravated indecent liberties with a child. The State agreed to support Rothstein's motion for a departure from a Jessica's Law life sentence to a Kansas Sentencing Guidelines Act (KSGA) grid sentence for a severity level 1 person felony. Both parties agreed to recommend concurrent midrange sentences. On April 10, 2009, the district court granted Rothstein's departure motion and imposed a controlling sentence of 155 months' imprisonment with 36 months' postrelease supervision.

On April 22, 2015, the State filed a motion to correct illegal sentence. The State contended that, on the dates Rothstein's crimes were committed, K.S.A. 22-3717(d)(1)(G) required a sentence of lifetime postrelease supervision for a conviction of attempted aggravated indecent liberties with a child. At the motion hearing, defense counsel argued that imposition of lifetime postrelease supervision was cruel and unusual punishment. After hearing arguments of counsel, the district court ruled that the 36-month postrelease supervision term was an illegal sentence. The district court considered Rothstein's constitutional challenge but ruled that a sentence of lifetime postrelease supervision was not cruel and unusual punishment. Thus, the district court granted the State's motion and imposed a sentence of lifetime postrelease supervision. Rothstein timely appealed.

On appeal, Rothstein first claims that his lifetime postrelease supervision sentence is illegal. Specifically, he argues that K.S.A. 22-3717 was amended in 2013 and the amended statute applies to his pending case. As a result of the amendment, Rothstein

contends that K.S.A. 2015 Supp. 22-3717(d)(1)(D) and K.S.A. 2015 Supp. 22-3717(d)(1)(G) directly conflict. He argues that under the rule of lenity, his postrelease supervision term should be 36 months under K.S.A. 2015 Supp. 22-3717(d)(1)(D), rather than lifetime under K.S.A. 2015 Supp. 22-3717(d)(1)(G).

Interpretation of a sentencing statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Also, whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

Rothstein's statutory argument recently was rejected by this court in *State v. Herrmann*, No. 114,887, 53 Kan. App. 2d ___, ___ P.3d ___ (*filed* November 18, 2016). In *Herrmann*, this court determined that K.S.A. 22-3717(d)(1)(D) only applies to persons convicted of a sexually violent crime after July 1, 1993, but before July 1, 2006. *Herrmann*, Syl. ¶ 5. This court further held that the 2013 amendments to K.S.A. 22-3717(d)(1)(D) do not alter the requirement in K.S.A. 22-3717(d)(1)(G) that a person convicted of a sexually violent crime after July 1, 2006, receive lifetime postrelease supervision. *Herrmann*, Syl. ¶ 4. We adopt this court's reasoning in *Herrmann* and apply that reasoning to the facts herein. Thus, we conclude that on the dates Rothstein's crimes were committed, K.S.A. 22-3717(d)(1)(G) required a sentence of lifetime postrelease supervision for a conviction of attempted aggravated indecent liberties with a child and the statutory amendments have not altered this result.

Next, Rothstein contends that, on the facts of his case, lifetime postrelease supervision is cruel and/or unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. When reviewing whether a sentence is cruel or unusual under the Kansas and United States Constitutions, appellate courts review the district court's factual findings for

3

substantial competent evidence and its legal conclusions de novo. This court does not reweigh the evidence. *State v. Funk*, 301 Kan. 925, 933, 349 P.3d 1230 (2015).

Section 9 of the Kansas Constitution Bill of Rights prohibits the infliction of cruel or unusual punishment. In *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), our Supreme Court held that punishment may be constitutionally impermissible, although not cruel or unusual in its method, "if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." The *Freeman* court set forth three criteria for evaluating whether the length of a sentence offends the constitutional prohibition against cruel or unusual punishment:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

The Eighth Amendment to the United States Constitution also prohibits cruel and unusual punishment. Defendants may raise two types of challenges under the Eighth Amendment: (1) A case-specific challenge in which the defendant claims, given the circumstances of the case, that the length of his or her sentence is grossly disproportionate to the offense; or (2) a categorical challenge in which the defendant claims the punishment is inherently disproportionate for a specific category of offenders. *Graham v. Florida*, 560 U.S. 48, 59-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

4

Rothstein does not make a categorical challenge under the Eighth Amendment. He also does not conduct a separate case-specific analysis under the Eighth Amendment; he considers only the *Freeman* factors.

*The first* Freeman *factor*

The first *Freeman* factor requires the court to consider the nature of the offense and the character of the offender with particular regard to the degree of danger present to society. Courts consider the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment. *Freeman*, 223 Kan. at 367.

The district court made several factual findings with respect to the first *Freeman* factor. The district found that Rothstein had a limited criminal history. The district court also found, based on the victim impact statements, that Rothstein's crimes were dangerous and that the children were psychologically damaged by Rothstein's actions:

> "[T]hese children were either afraid to or unaware of their being violated, afraid to report or naive enough not to report what was going on with them for some period of time as a result of the manipulation of them psychologically by Mr. Rothstein and he knew what he was doing was wrong and he took advantage of the age and immaturity of these children to perpetuate these crimes on them. Unfortunately, these kinds of crimes are considered by society to be so heinous because oftentimes the victims are unable to resist or even unaware of their need to resist and then later as they psychologically mature they reap the benefits of their conscience in psychological damage of things that happen that they don't understand. Takes them a long time to work through that. I know that one of these girls wrote a letter and was talking about how her grades were affected, how her attention is affected and things like that, so the crime is a seriously dangerous crime not because it's so violent physically but because it's damaging psychologically to the victims."

The district court further found that Rothstein knew what he was doing was wrong, but he did not stop himself until he was caught. The district court concluded that

the first *Freeman* factor weighed against Rothstein and supported the imposition of lifetime postrelease supervision.

Rothstein admits that the district court's findings are supported by substantial competent evidence. However, he contends that the first factor should have still weighed in his favor. He cites the fact that, at sentencing, the district court departed from a Jessica's Law sentence because the court found Rothstein had psychological problems, he had no significant criminal history, and he had accepted responsibility by pleading guilty.

In *State v. Mossman*, 294 Kan. 901, 903, 281 P.3d 153 (2012), the defendant was convicted of aggravated indecent liberties with a 15-year-old victim. The defendant contended his character did not support a sentence of lifetime postrelease supervision because an assessment concluded he had a low risk of recidivism, he had no criminal history, he accepted responsibility, and he had shown remorse for his crime. 294 Kan. at 911. However, our Supreme Court found the arguments unpersuasive because postrelease supervision has other legitimate penological goals than punishment or retribution; it is also designed to deter and rehabilitate sex offenders. 294 Kan. at 911.

Rothstein's case is similar to the facts in *Mossman*. Like the defendant in *Mossman*, Rothstein had little criminal history and accepted responsibility for the crime. Although the district court found that Rothstein may have psychological problems, it also found that Rothstein knew what he was doing was wrong, but that he did not stop until he was caught. Rothstein's arguments also ignore the penological purpose of postrelease supervision—to deter and rehabilitate sex offenders. Lifetime postrelease supervision will help ensure Rothstein does not offend again when he is released from prison because he will remain under the watchful eye of his supervising officer. We agree with the district court that the first *Freeman* factor weighs in favor of imposing lifetime postrelease supervision in Rothstein's case.

6

*The second* Freeman *factor*

The second *Freeman* factor requires the court to compare the punishment in the present case with punishments imposed for more serious offenses in Kansas. *Freeman*, 223 Kan. at 367. With respect to the second *Freeman* factor, the district court stated:

> "That other crimes, like, even taking of a human life don't require lifetime post release doesn't really help him that much because sex crimes are more likely to be repeated by the offenders than other kinds of violent crimes because of the psychological nature of those crimes, so I think that I believe that it is justified that the legislature has provided for lifetime post release for this crime where it doesn't get him in more serious crimes and doesn't shock the conscience that the legislature has done that."

Rothstein contends that second-degree intentional murder is a more serious crime than attempted indecent liberties with a child but that the postrelease supervision term for second-degree intentional murder is much less severe. Rothstein acknowledges our Supreme Court has rejected similar arguments. See *State v. Funk*, 301 Kan. 925, 941-42, 349 P.3d 1230 (2015); *Mossman*, 294 Kan. at 912-17; *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143 (2012).

Additionally, Rothstein's argument that intentional second-degree murder is a "more serious" crime than his offense ignores the fact that Rothstein's crimes of attempted aggravated indecent liberties with a child are severity level 1 person offenses. See K.S.A. 21-3301; K.S.A. 21-3504(a)(3)(A). Thus, the Kansas Legislature has made the determination that Rothstein's crimes are just as severe as intentional second-degree murder. The State has a "vital interest in protecting minors from sex activities" and therefore sex crimes against minors are treated as violent felonies even if no physical force is involved. *Mossman*, 294 Kan. at 909. We conclude that the second *Freeman* factor weighs in favor of imposing lifetime postrelease supervision in Rothstein's case.

7

*The third* Freeman *factor*

The third *Freeman* factor requires the court to compare the punishment for this offense with punishments in other jurisdictions for the same offense. *Freeman*, 223 Kan. at 367. As to the third *Freeman* factor, the district court found that "this crime is not so out of line with what's provided for in other jurisdictions that it would violate the constitution."

Rothstein contends that Kansas is in an extreme minority of states that impose mandatory irrevocable lifetime postrelease supervision on individuals convicted of attempted indecent touching offenses. However, this same argument previously has been rejected by our Supreme Court.

The *Mossman* court conducted an extensive survey of lifetime postrelease supervision laws in other states. 294 Kan. at 917-19. The court held that lifetime postrelease supervision was not cruel or unusual punishment for aggravated indecent liberties with a child, despite the fact that Kansas was one of only a few states that required the punishment. 294 Kan. at 920. See also *Funk*, 301 Kan. at 942 (applying the analysis to an attempt crime).

In *State v. Reed*, 51 Kan. App. 2d 107, 109, 115, 341 P.3d 616 (2015), this court upheld lifetime postrelease supervision against a categorical challenge for a first-time offender with no criminal history convicted of one count of attempted aggravated indecent liberties with a child. The court noted that, other than Kansas, Nebraska is the only state that imposes mandatory lifetime postrelease supervision for first-time attempted indecent touching offenses. 51 Kan. App. 2d at 111. Based on the legal authority in Kansas, we conclude that the third *Freeman* factor weighs in favor of imposing lifetime postrelease supervision for Rothstein's convictions.

8

In sum, lifetime postrelease supervision is not so disproportionate to Rothstein's crime that it shocks the conscience or offends fundamental notions of human dignity. See *Mossman*, 294 Kan. at 908. Moreover, the imposition of lifetime postrelease supervision is not grossly disproportionate for Rothstein's crime. See *Mossman* 294 Kan. at 924. Substantial competent evidence supports the district court's conclusion that lifetime postrelease supervision in this case is constitutional under § 9 of the Kansas Constitution and the Eighth Amendment to the United States Constitution.

Affirmed.