NOT DESIGNATED FOR PUBLICATION

No. 116,609

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN D. KIRK, II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 3, 2017. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: Claiming that a perceived conflict between two provisions of the statutes dealing with postrelease supervision must be resolved in his favor, Stephen D. Kirk, II contends the court should have kept his sentence at 24 months' postrelease supervision instead of changing it to lifetime supervision. He also claims that lifetime postrelease supervision for first-time offenders convicted of aggravated sexual battery is categorically disproportionate and unconstitutional. Because we find no conflicts in the sentencing statute and that lifetime postrelease supervision is not categorically

1

disproportionate for first-time offenders, we hold the court did not err by following the law. We affirm.

In 2012, Kirk pled guilty to aggravated sexual battery—a severity level 5 person felony—and misdemeanor domestic battery. These crimes occurred in June 2011. The district court sentenced Kirk to 60 months in prison and 24 months' postrelease supervision. Then, four years later, in 2016, the State filed a motion to correct an illegal sentence because under K.S.A. 2016 Supp. 22-3717(d)(1)(G), Kirk should have been sentenced to lifetime postrelease supervision. The district court agreed, granted the State's motion, and resentenced Kirk to lifetime postrelease supervision.

*Does the law require lifetime postrelease supervision here?*

Kirk contends that the district court misconstrued K.S.A. 2016 Supp. 22-3717 when modifying his sentence. He contends that although the statute in effect at the time of his crimes directed the court to impose lifetime postrelease supervision, the statute was later retroactively amended in 2013. Even though the Legislature did not remove the mandatory lifetime postrelease supervision term for offenders convicted of sexually violent crimes, it had added language to the statute that, Kirk argues, directs the court to sentence sex crime offenders to serve a postrelease supervision term based on the severity level of the crime. He argues that since the two subsections conflict, the conflict should be resolved in his favor. Thus, he maintains his new sentence is illegal.

Even though Kirk raises this argument for the first time on appeal, a defendant may challenge an illegal sentence for the first time on appeal. *State v. Fisher*, 304 Kan. 242, 263-64, 373 P.3d 781 (2016). Whether a sentence is illegal is a question of law over which appellate courts have unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Kansas courts have previously decided that a district court's failure to comply with K.S.A. 22-3717(d)(1) results in an illegal sentence. See *State v. Ballard*, 289 Kan.

2

1000, 1012, 218 P.3d 432 (2009); *State v. Baber*, 44 Kan. App. 2d 748, 753-54, 240 P.3d 980 (2010). Thus, we may review Kirk's statutory interpretation argument for the first time on appeal.

At the time of Kirk's offense, the law set out several periods of postrelease supervision from 24 months to lifetime supervision:

> "(d)(1) *Persons sentenced for crimes, other than* off-grid crimes, committed on or after July 1, 1993, or *persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:*
> . . . .
> (B) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity levels 5 and 6 crimes and drug severity level 3 crimes must serve 24 months, plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, and amendments thereto, on postrelease supervision.
> . . . .
> (D)(i) The sentencing judge shall impose the postrelease supervision period provided in subparagraph (d)(1)(A), (d)(1)(B) or (d)(1)(C), unless the judge finds substantial and compelling reasons to impose a departure based upon a finding that the current crime of conviction was sexually motivated. In that event, departure may be imposed to extend the postrelease supervision to a period of up to 60 months.
> . . . .
> (G) Except as provided in subsection (u), *persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.*" (Emphases added.) K.S.A. 2010 Supp. 22-3717(d)(1).

Then, in 2013, the Legislature added the following language, making the period of postrelease for some crimes dependent on the severity level of the conviction:

3

"(D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, a sexually motivated crime in which the offender has been ordered to register pursuant to subsection (d)(1)(D)(vii) of K.S.A. 22-3717, and amendments thereto, electronic solicitation, K.S.A. 22-3523, prior to its repeal, or K.S.A. 2016 Supp. 21-5509, and amendments thereto, or unlawful sexual relations, K.S.A. 21-3520, prior to its repeal, or K.S.A. 2016 Supp. 21-5512, and amendments thereto, shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C) plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2016 Supp. 21-6821, and amendments thereto, on postrelease supervision."

Kirk argues this new language conflicts with and nullifies K.S.A. 2016 Supp. 22-3717(d)(1)(G).

These arguments were specifically rejected by this court in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019 (2016), *rev. denied* ___ Kan. ___ (July 25, 2017). The panel construed the statute as a whole and found no conflict or ambiguity in the amended statute. Subsection (d)(1) expressly states that the postrelease supervision terms provided in the subparagraphs that follow do not apply to "persons subject to subparagraph (G)." The panel concluded that K.S.A. 2015 Supp. 22-3717(d)(1)(D) applied to offenders who committed a sexually violent crime on or after July 1, 1993, and before July 1, 2006, while (d)(1)(G) applied to offenders who committed a sexually violent crime on or after July 1, 2006. The panel also examined the legislative history, which confirmed that the new language in subparagraph (D) was not intended to conflict with subparagraph (G), but was about good time credit. 53 Kan. App. 2d at 152-54.

While Kirk did not acknowledge *Herrmann* in his brief, in his reply brief he contends that *Herrmann* is not binding on us. While that is true, the reasoning in *Herrmann* is persuasive. Many other panels of this court have agreed with its reasoning. See, e.g., *State v. Wol*, No. 115,633, 2017 WL 3000839, at *6-10 (Kan. App. 2017)

4

(unpublished opinion); *State v. Cox*, No. 115,924, 2017 WL 3000852, at *1-2 (Kan. App. 2017) (unpublished opinion); *State v. Candley*, No. 115,640, 2017 WL 2494948, at *4-6 (Kan. App. 2017) (unpublished opinion). We agree with them.

Additionally, effective May 18, 2017, the Legislature amended the law, making it consistent with the *Herrmann* holding:

> "(D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717, and amendments thereto, *committed on or after July 1, 1993, but prior to July 1, 2006*, . . . shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C), plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 2016 Supp. 21-6821, and amendments thereto, on postrelease supervision." (Emphasis added.) L. 2017, ch. 100, §10.

We note that the Legislature did *not* delete K.S.A. 2016 Supp. 22-3717(d)(1)(G), mandating lifetime postrelease supervision for offenders who committed a sexually violent crime. Rather, the Legislature only modified the provision to apply only to offenders who were at least 18 years old when the offender committed the crime. See L. 2017, ch. 100, §10. When the Legislature fails to modify a statute to avoid a standing judicial construction of the statute, the court presumes the Legislature intended the statute to be interpreted as it has done. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1052, 190 P.3d 245 (2008).

Kirk argues that *Herrmann* is flawed because it ignored that both subparagraphs (D) and (G) were under subsection (d)(1). Kirk argues that subsection (d)(1) merely states that persons subject to subparagraph (G) are "not eligible for parole." The *Herrmann* panel did not ignore that (D) and (G) were under subsection (d)(1). The beginning of (d)(1) reads:

5

"(d) (1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:"

The *Herrmann* panel explained that an express statement made in the statute clarified that sexually violent offenders were excluded:

"We find the plain language of the statute clearly decides the issue presented. Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.' Herrmann was convicted of attempted aggravated indecent liberties with a child, which is a sexually violent crime under subsection (d)(5)(C) and (d)(5)(M). His conviction occurred after July 1, 2006. Because Herrmann is subject to subparagraph (G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D)." 53 Kan. App. 2d at 152.

Kirk argues that the panel read a timeframe limitation into K.S.A. 2015 Supp. 22-3717 that did not exist. We do not agree. The panel merely noted that the provisions of K.S.A. 2015 Supp. 22-3717(d) as a whole applied to persons convicted for crimes committed after July 1, 1993, and that subparagraph (G) was added to the statute in 2006 to create an explicit exception for a "'person convicted of a sexually violent crime committed on or after July 1, 2006.'" 53 Kan. App. 2d at 153.

Kirk also argues the *Herrmann* court ignored the legislative intent for the entire sentencing scheme because the Legislature also amended K.S.A. 2016 Supp. 21-6821 so

6

that offenders convicted of sexually violent crimes must serve good time earned while on postrelease supervision, but that provision does not limit the change to offenders convicted between 1993 and 2006. But a look at the entire sentencing scheme confirms the *Herrmann* panel's analysis that the Legislature's intent was merely to modify the calculation of good time credit for certain offenders, rather than to modify the mandatory lifetime postrelease supervision term for offenders convicted of sexually violent crimes.

The modifications to K.S.A. 2016 Supp. 21-6821 and to K.S.A. 2016 Supp. 22-3717(d)(1)(A)-(C) reduced the length of postrelease supervision sentences by not requiring good time credits be added to the offender's postrelease term. But the Legislature did not extend that benefit to offenders convicted of certain crimes, including sexually violent crimes. The Legislature amended K.S.A. 2016 Supp. 21-6821(c) and K.S.A. 2016 Supp. 22-3717(d)(1)(D) to provide an exception for persons convicted of sexually violent crimes. See 53 Kan. App. 2d at 153-54. The amended K.S.A. 2016 Supp. 21-6821 provisions are not ineffectual for any purpose. Good time credit would be added to the postrelease supervision term under K.S.A. 2016 Supp. 22-3717(d)(1)(D) but not to the postrelease supervision term under K.S.A. 2016 Supp. 22-3717(d)(1)(G).

We see no compelling reason to depart from the *Herrmann* reasoning. But even without the *Herrmann* analysis, Kirk faces another hurdle:  the 2017 amendments to K.S.A. 22-3717(d)(1)(D). Kirk argued in his original brief that legislative changes to this section must be applied retroactively. Kirk cannot have it both ways. Either the statutory changes do not apply retroactively and the 2013 amendment never applied to him, or the 2017 changes apply retroactively. Either way, Kirk is subject to a mandatory lifetime postrelease supervision term even without the *Herrmann* analysis.

*Is lifetime postrelease supervision for first-time offenders convicted of aggravated sexual battery categorically disproportionate in violation of the Eighth Amendment to the United States Constitution?*

Kirk raises a categorical challenge to his sentence of lifetime postrelease supervision under the Eighth Amendment.

The Eighth Amendment to the United States Constitution, which applies to the States under the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Defendants may raise two types of challenges under the Eighth Amendment:

- a case-specific challenge in which the defendant claims, given the circumstances of the case, the length of his or her sentence is grossly disproportionate to the offense; or
- a categorical challenge in which the defendant claims the punishment is inherently disproportionate for a specific category of offenders, involving the nature of the offense or the characteristics of the offender. *Graham v. Florida*, 560 U.S. 48, 59-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

Defendants may not raise a case-specific challenge under the Eighth Amendment for the first time on appeal because of the factual inquiries involved. Defendants also may not raise a Kansas Constitution Bill of Rights § 9 claim for the first time on appeal because of the lack of district court fact-finding. However, defendants may raise a categorical challenge under the Eighth Amendment for the first time on appeal because such a challenge is not case-specific and raises purely a question of law. *State v. Williams*, 298 Kan. 1075, 1084-85, 319 P.3d 528 (2014). Accordingly, our Supreme Court has permitted defendants to raise categorical challenges for the first time on appeal.

8

See, e.g., *State v. Dull*, 302 Kan. 32, 39, 351 P.3d 641 (2015). Kirk's claim is properly before this court.

This court has unlimited review over whether lifetime postrelease supervision violates the Eighth Amendment under a categorical challenge. *Williams*, 298 Kan. at 1086.

In considering a categorical Eighth Amendment challenge, courts first consider objective indicia of societal standards as conveyed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing rule at issue. Second, guided by precedent and the Eighth Amendment's text, history, meaning, and purpose, the court exercises its own independent judgment and determines whether the punishment violates the Constitution. *Graham*, 560 U.S. at 61.

Kirk challenges the constitutionality of lifetime postrelease supervision for first-time offenders convicted of aggravated sexual battery. When Kirk committed this crime, the statute prohibited sexual touching under several different circumstances:

> "(a) Aggravated sexual battery is the intentional touching of the person of another who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another under any of the following circumstances:
> (1) When the victim is overcome by force or fear;
> (2) when the victim is unconscious or physically powerless; or
> (3) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by, or was reasonably apparent to, the offender." K.S.A. 21-3518.

Also, aggravated sexual battery is a sexually violent crime subject to mandatory lifetime postrelease supervision. K.S.A. 2010 Supp. 22-3717(d)(1)(G); 22-3717(d)(2)(I).

Other panels of this court have concluded that the sentence of lifetime postrelease supervision for aggravated sexual battery is not categorically disproportional under the Eighth Amendment. See *State v. Sheltrown*, No. 114,180, 2017 WL 1104503, at *3-5 (Kan. App. 2017) (unpublished opinion); *State v. Kelly*, No. 108,072, 2014 WL 4231185, at *2-4 (Kan. App. 2014) (unpublished opinion); *State v. Lazo-Gaitam*, No. 103,818, 2013 WL 678205, at *6-7 (Kan. App. 2013) (unpublished opinion); *State v. Collins*, No. 100,996, 2012 WL 6734500, at *5-8 (Kan. App. 2012) (unpublished opinion). Kirk offers no compelling reason to depart from these holdings. We see no reason to do so now.

*Is there a national consensus against lifetime postrelease supervision for the crime of aggravated sexual battery?*

Kirk contends that the *Lazo-Gaitam* panel lumped all sex offenses together to determine that there was a national consensus for lifetime postrelease supervision. He contends there is no national consensus for lifetime postrelease supervision as a punishment for aggravated sexual battery.

When the *Lazo-Gaitam* panel considered several sex offenses together, it noted that our Supreme Court has adopted the finding made by the Ninth Circuit Court of Appeals that noted a national increase in sentences with lifetime supervised release:

> "'Here, "objective indicia" suggest[s] that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common. According to the United States Sentencing Commission, in the last five years, federal courts have sentenced 1875 defendants convicted of child pornography and child prostitution crimes to lifetime supervised release. [Citation omitted.] By way of comparison, in banning the sentence of life without parole for juvenile nonhomicide offenders, the Supreme Court

10

noted that there were then just 123 people in the count[r]y serving such sentences. [Citation omitted.] Further, the percentage of federal sex offenders receiving life terms of supervised release is increasing, climbing from 9.3 percent in 2005, to 20.5 percent in 2009. [Citation omitted.]'" 2013 WL 678205, at *6.

Further, in *State v. Cameron*, 294 Kan. 884, 897, 281 P.3d 143 (2012), the court noted that several other states have adopted lifetime postrelease supervision "for many, if not, all sexually violent crimes." Basically, in *Cameron* and *State v. Mossman*, 294 Kan. 901, 920, 281 P.3d 153 (2012), the court considered all sexually violent crimes together when making this assessment. See *State v. Reed*, 51 Kan. App. 2d 107, 112-13, 341 P.3d 616 (2015).

Kirk contends that only Kansas imposes lifetime supervision without any possibility of discharge or release for first-time offenders convicted of aggravated sexual battery. He cites four other states that have mandatory lifetime postrelease supervision for this offense but allow the possibility of an offender's discharge or release from supervision. He contends other states reserve the sentence for more serious offenses (such as those involving force, prostitution, pornography, or children under 14), repeat offenders, or offenders having characteristics that make them dangerous or likely to reoffend. Again, prior cases teach us otherwise.

The *Sheltrown* panel rejected the same arguments for several reasons:

- Aggravated sexual battery cannot be distinguished from other sexual offenses under Kansas law based on the lack of a force element;
- aggravated sexual battery is not a less severe offense than aggravated indecent solicitation of a child under Kansas law—both are severity level 5 person felonies—and the Kansas Supreme Court held in *Cameron* that lifetime

11

postrelease supervision was not categorically disproportionate for the crime of aggravated indecent solicitation of a child;

- our Supreme Court has previously refused to find that mandatory lifetime postrelease supervision is cruel or unusual punishment even though only a handful of states impose punishment as absolute as Kansas' requirement;

- in *Reed*, 51 Kan. App. 2d at 111-115, this court upheld lifetime postrelease supervision against a categorical challenge even though the court noted that other than Kansas, Nebraska is the only state that imposes mandatory lifetime postrelease supervision for the offense in question; and

- the fact that Kansas is one of few states that impose lifetime postrelease supervision without the possibility of release for the crime of aggravated sexual battery does not mean that there is a national consensus condemning such punishment. *Sheltrown*, 2017 WL 1104503, at *3-4.

Kirk offers no reason to depart from the *Sheltrown* panel's sound reasoning.

*In the court's independent judgment, is lifetime postrelease supervision an unconstitutional punishment for aggravated sexual battery?*

Community consensus, while entitled to great weight, is not itself determinative of whether a punishment is cruel and unusual. The court must use its own judgment and consider the culpability of the offenders in light of their crimes and characteristics and the severity of the punishment. The court also considers whether the sentencing rule at issue serves legitimate penological goals—retribution, deterrence, incapacitation, and rehabilitation. *Graham*, 560 U.S. at 67, 71.

Kirk contends that offenders convicted of aggravated sexual battery are less culpable than those convicted of crimes involving sexual penetration, prostitution, pornography, or children under 14. He argues society's need for retribution is thus

12

diminished. However, aggravated sexual battery is also a sexually violent crime. Panels of this court rejected a similar argument in *Sheltrown*, 2017 WL 1104503, at *5, and *Kelly*, 2014 WL 4231185, at *3.

Kirk mentions that he is in a category of "first-time offenders" but does not argue how that changes the analysis. In *Mossman* and *Williams*, the Kansas Supreme Court upheld the constitutionality of lifetime postrelease supervision even though it considered the defendants to be in a class of first-time offenders. 294 Kan. at 928-930; 298 Kan. at 1086-1090.

Kirk argues that lifetime postrelease supervision serves no penological goals. But our Supreme Court has held otherwise. The *Cameron* court held lifetime postrelease supervision serves legitimate penological goals. 294 Kan. at 898; see *Lazo-Gaitam*, 2013 WL 678205, at *7. Supervised release helps rehabilitate sex offenders. Further, supervised release can incapacitate sex offenders because they are kept under the "watchful eye" of probation officers. *Cameron*, 294 Kan. at 898. Rehabilitation and incapacitation are critical goals of the criminal justice system given the propensity of sex offenders to reoffend. *Mossman*, 294 Kan. at 930. The *Collins* panel concluded lifetime postrelease supervision serves the combined penological goals of rehabilitation, incapacitation, retribution, and deterrence. 2012 WL 6734500, at *8; see *Sheltrown*, 2017 WL 1104503, at *5.

We hold that lifetime postrelease supervision is not inherently disproportionate for first-time offenders convicted of aggravated sexual battery.

Affirmed.