No. 70,301

STATE OF KANSAS, *Appellee*, v. VICTOR J. SMITH, *Appellant*.

(904 P.2d 999)

Opinion filed October 27, 1995.

*Benjamin C. Wood*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Gayle B. Larkin*, assistant district attorney, *Mark A. Knight*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

The opinion of the court was delivered by

LARSON, J.: Victor J. Smith appeals his convictions of two counts of first-degree murder. K.S.A. 1992 Supp. 21-3401.

Smith contends (1) he was denied a fair trial due to prosecutorial misconduct, (2) the trial court erred in responding to the jury's inquiry, and (3) the evidence was insufficient to support his conviction.

Smith fatally shot his ex-wife, Linda Smith, and her friend, John Pease, in their Lawrence apartment at approximately 5 a.m. on March 13, 1993. Smith admitted the shootings but contended he acted in self-defense.

The day prior to the shooting, Smith purchased a gun and ammunition in Wichita. He took a bus to Lawrence and arrived about 10 p.m. After stopping at a friend's house, Smith and a friend smoked crack cocaine and drank whiskey for about 30 minutes. Smith spent the rest of the night walking around Lawrence.

Smith testified that when he saw lights on at his ex-wife's residence, he knocked on the door. When Pease answered the door and threatened him, Smith started "popping away" and followed Pease into the apartment, firing at him many times. Smith then heard Linda threatening him from upstairs. He fired one shot at her and hit her in the arm. He then ran upstairs to find his daughter while reloading his gun. Smith testified that his gun discharged during the reloading, with the bullet fatally striking Linda. Smith fled from the city but was arrested approximately 18 hours later in Chanute, Kansas.

A forensic examination revealed Pease died from four to five gunshot wounds. Linda died after she was shot two or three times. Testimony showed a stormy relationship resulting in the parties' divorce, with specific testimony that Smith had previously threatened to kill Linda.

Linda's neighbors' testimony differed materially from Smith's. The neighbors were awakened by two shots and the slamming of Linda's front door. They heard a woman scream as she ran up the stairs, some commotion upstairs, and then the woman screaming as she ran back down the stairs. Next, they heard three consecutive shots coming from the bottom of the stairs near the front door of Linda's apartment, and then there was silence.

A jury convicted Smith of two counts of first-degree murder. He was sentenced to two consecutive terms of life imprisonment.

Smith's contention that he was denied a fair trial because of prosecutorial misconduct is based on an inflammatory question asked by the prosecutor plus allegedly improper remarks made during closing arguments.

During direct examination, Smith testified that he asked for a Bible after being booked into the jail in Chanute. On cross-examination of Smith, the prosecutor confirmed that Smith requested a Bible and then asked, "Is that the same Bible that says 'Thou shalt not kill' "? The defense counsel immediately objected, saying, "Your Honor, I object to that on two grounds. There is no place in the Bible that says, 'Thou shalt not kill.' It's irrelevant." The trial judge sustained the objection stating, "It's argumentative, and if there is another outburst in the courtroom, I will clear the courtroom. Go ahead, Mr. Wells." The prosecutor then said he had no further questions.

Smith contends the comment denied him a fair trial because it violated his First Amendment rights. He contends the comment was made to appeal to the jury's religious fervor.

A prosecutor's duty was reiterated by this court in *State v. Ruff*, 252 Kan. 625, 634, 847 P.2d 1258 (1993):

"It is the duty of the prosecutor in a criminal matter to see that the State's case is properly presented with earnestness and vigor and to use every legitimate means to bring about a just conviction, but he should always bear in mind that he is an officer of the court and, as such, occupies a quasi-judicial position whose sanctions and traditions he should preserve. *State v. Wilson,* [188 Kan. 67, 73, 360 P.2d 1092 (1961).]"

The Model Rules of Professional Conduct prohibit a lawyer from alluding to any matter he or she does not reasonably believe is relevant or that will not be supported by admissible evidence at trial. MRPC 3.4 (1994 Kan. Ct. R. Annot. 352).

Any effort by the prosecutor reasonably calculated to appeal to or evoke religious prejudice is to be condemned. *State v. Lee*, 201 Kan. 177, 179, 440 P.2d 562 (1968). "The dignity of the court, the decorum of the trial, and the interest of truth and justice forbid

license of speech in arguments to jurors outside the proper scope of professional discussion." *Ruff*, 252 Kan. at 635.

The prosecutor's question was clearly improper. However, "[i]t is . . . well established that an appellate court will not find reversible error when an objection to a prosecutor's question or statement has been sustained." *State v. Pioletti*, 246 Kan. 49, 67, 785 P.2d 963 (1990). The trial court sustained defense counsel's objection and the defendant was not allowed to answer the question. It follows that the prosecutor's question, although imprudent and unnecessary, did not constitute reversible error. In testing whether an improper action of a prosecutor requires reversal, we must determine whether the likelihood of the error changed the result of the trial. *State v. Chism*, 243 Kan. 484, 493, 759 P.2d 105 (1988). The request for the Bible was raised by Smith in direct examination, and while the prosecutor's response was ill-advised, there was no likelihood the improper question changed the result of the trial.

Smith's reliance on two United States Supreme Court cases is misplaced. He first cites for support *Pennsylvania v. Mimms*, 434 U.S. 106, 114, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), where he quotes from the footnotes of a dissent. The other case he cites for support, *South Carolina v. Gathers*, 490 U.S. 805, 104 L. Ed. 2d 876, 109 S. Ct. 2207 (1989), *overruled* by *Payne v. Tennessee*, 501 U.S. 808, 830, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1990), involved the relevancy of the *victim's* personal qualities in the defendant's sentencing proceeding; the issue in *Gathers* is not relevant to the facts here.

Additionally, Smith contends he is entitled to a new trial because of improper statements by the prosecution during closing argument to which he did not object. Smith complains of the following statements:

"Finally, I would say this to you, ladies and gentleman: This defendant has been a man who has been self indulgent apparently most of his adult life, and this was in fact another act of self indulgence to remove his anger and his rage against his wife for what she had done to him by divorcing him, and against her fiance', and he shot them and he executed them and he did it in cold blood with multiple shots. Look at these pictures, ladies and gentlemen. No one should die like this, no one, and the only way you die like this with multiple gunshot wounds is through premeditated, deliberate, intentional acts of murder. Thank you."

First, reversible error should not be predicated upon a complaint of misconduct of counsel during closing argument where as here, there is no contemporaneous objection. *State v. Baker*, 249 Kan. 431, 446, 819 P.2d 1173 (1991). Second, the statement is not improper argument. Smith's contention that he is entitled to a new trial based on prosecutorial misconduct is without merit.

Smith next contends the trial court abused its discretion by its response to the jury's request for a copy of the trial transcript. When the jury asked the court: "May we also have a transcript of the testimony[?]" defense counsel suggested that the judge inform the jury that the transcript had not yet been transcribed. The judge ascertained from the court reporter that it would take several days to prepare the transcript and that it would take a considerable amount of time to read back the entire trial to the jury. Defense counsel objected to providing the jury with the transcript or having the entire trial read back.

In response to the State's suggestion that the judge explain to the jury that "it is impossible to do what they have requested in its entirety, but if there are specific excerpts that they want read back, that they have a right to do that," the following colloquy occurred:

"[DEFENSE COUNSEL]: No, they don't have a right to do that. They have a right to request it. It may well be if they ask for too much, the Judge can say no, that is excessive or if they ask for too little, the Judge may require more to be read back.

"THE COURT: The trouble with a readback is exactly that. When do you begin and when do you end so it's not taken out of context. Of course, if the jury wants to have the particular testimony read back to them, then arguably, if it's in the State's direct, then the defense is allowed to have the cross examination of . . . that issue read back to them. I propose or I will suggest to you that I will . . . explain to the jury that the transcript of the trial is not prepared and will not be ready for several weeks if not months and that if they are in need of a particular readback of an area of the witness' testimony, they need to request that, and whether or not that is granted would depend on what their request is. Is that agreeable?

"[PROSECUTOR]: Sure.

"THE COURT: Good."

The trial court informed the jury:

"Your second question is the reason why I brought you in here. That was, 'May we have a transcript of the testimony?' There is no transcript of the testimony. I think there is some misconceptions about that and I thought it was important to explain it to you. In Federal Court, as I understand it, they do what is called daily copy and that is one court reporter comes in for awhile and covers it and goes out and transcribes it and then changes it from shorthand basically to a readable fashion. We don't have that luxury in state courts. The transcript of this proceeding, the length of time it would take would be at least several days in order for it to be prepared, edited and then finally verified, so that is not a possibility to give you the transcript of the trial. Now you should rely on your memories as fact finders in this case as to what the testimony is. However, if you do want a particular area of testimony read back to you, you may specifically request that. Now whether or not that is done depends on how the question is phrased, what part of it you want, that type of thing, but it's hard just to have a sentence or two read back and then for it to be considered in context, so you must keep that in mind when making your request, but again, you may request a specific readback of an individual's testimony. However, you should also try to rely on your collective memories in what these individuals have testified to; and with that instruction, I am going to send you back to the jury deliberation room. Thank you."

Smith now contends K.S.A. 22-3420(3) creates a mandatory duty on the trial court to provide a readback when the jury requests that *any* part of the evidence be read or exhibited to them. He asserts that "[s]imply sending the jury back was tantamount to a flat denial of their request."

K.S.A. 22-3420(3) provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where . . . the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

Although a trial court is required to accede to a jury's request to read back testimony, the trial court has discretion to clarify and focus the jury's inquiry. *State v. Myers*, 255 Kan. 3, 8, 872 P.2d 236 (1994). The trial court's duty was further defined in *State v. Boyd*, 257 Kan. 82, 88, 891 P.2d 358 (1995), where we stated:

"[A] trial court may not ignore a jury's request submitted pursuant to K.S.A. 22-3420(3) but must respond in some meaningful manner or seek additional clarification or limitation of the request. It is only when the trial court makes no attempt to provide a meaningful response to an appropriate request or gives an erroneous

response that the mandatory requirement of K.S.A. 22-3420(3) is breached. Once the trial court attempts to give an enlightening response to a jury's request, then the standard of review as to the sufficiency or propriety of the response is one of abuse of discretion by the trial court."

A defendant may waive the right to challenge the trial court's response to a jury request by failing to object. *Boyd,* 257 Kan. at 89. In this case, defense counsel waived Smith's presence at the conference between the trial court and counsel, and both Smith and his counsel were present when the trial court addressed the jury. Smith had the opportunity to object to the court's response, but failed to do so.

Additionally, the defense counsel was opposed to providing the jury with a transcript or having the entire trial read back to the jury. The trial court followed defense counsel's suggestion to inform the jury that the transcript was not available and that the jury had a right to request a readback of specific testimony, although the trial court would have discretion in limiting an excessive request or expanding a narrow request. If the trial court had responded improperly, this is almost tantamount to invited error.

Viewed either way, this issue is without merit. The trial court made a proper and meaningful response to the jury's inquiry and did not abuse its discretion.

Finally, we consider Smith's contention that the evidence is insufficient and, based on the facts, an inference of premeditation is not reasonable in this case.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham,* 247 Kan. 388, 398, 799 P.2d 1003 (1990).

K.S.A. 1992 Supp. 21-3401 defines first-degree murder as the killing of a human being committed maliciously, willfully, deliberately, and with premeditation.

The record indicates Smith had previously threatened to kill his ex-wife. On the day before the shootings, he purchased a larger caliber gun than he had previously owned and ammunition before taking a bus from Wichita to Lawrence. He prepared himself with

cocaine and alcohol while walking around Lawrence waiting for the lights to come on in his ex-wife's apartment. When he knocked on the door, an unarmed Pease answered. Smith fired at Pease at least five times and followed him into the apartment.

Once inside, Smith shot Linda two or three times and reloaded his gun while inside the apartment. Neither victim was armed.

This evidence, viewed in the light most favorable to the prosecution, is clearly sufficient for a rational factfinder to find Smith guilty beyond a reasonable doubt.

Affirmed.