NOT DESIGNATED FOR PUBLICATION

No. 115,633

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AGOSTINO MICHAEL WOL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed July 14, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MCANANY, P.J., GREEN and BUSER, JJ.


*Per Curiam*:  Agostino Wol appeals his conviction and sentence for attempted rape. Wol contends that (1) the trial court erred in its response to a jury question; (2) the trial court erred by sentencing him to lifetime postrelease supervision; and (3) the imposition of lifetime postrelease supervision constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Although Wol briefly states that his sentence of lifetime postrelease supervision also violated § 9 of the Kansas Constitution Bill of Rights, he has provided no argument supporting this claim. Thus, we conclude that he has abandoned any argument he had about his sentence violating § 9 of

1

the Kansas Constitution Bill of Rights. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (holding a point raised incidentally in a brief but not argued therein is deemed waived and abandoned). As a result, no further analysis concerning this claim will be considered. Moreover, for reasons set below, we reject Wol's remaining arguments. Accordingly, we affirm Wol's attempted rape sentence and conviction.

On October 11, 2013, the State charged Wol with attempted rape, a severity level 3 person felony in violation of K.S.A. 2013 Supp. 21-5503 and K.S.A. 2013 Supp. 21-5301. The charge stemmed from events that happened between Wol and his estranged wife, V.G., on October 9, 2013.

On August 3, 2015, Wol's jury trial was held. At his trial, V.G. as well as Officer Ian Mills, who was the police officer who investigated Wol's case, testified on behalf of the State.

V.G. testified that when she got home from work on October 9, 2013, Wol was watching their daughters at her apartment as previously arranged. V.G. testified that after she changed out of her work clothes, she asked Wol to leave, and he eventually did. V.G. explained that soon after Wol left, she heard a knock on the door. When she opened the door, she saw Wol standing outside. According to V.G., she let Wol back into the apartment because she figured he had forgotten something. Once Wol was inside the apartment, she noticed that he was upset. He was talking about how he could not find a job, which was at the root of their marital problems. She testified that at this point, Wol "grabbed ahold of [her] and then [] pulled [her] down" onto the kitchen floor. Wol then took his shirt off, pulled down his pants, and lifted her skirt up. When she realized that Wol was trying to have sex with her, "[she] told him [she] didn't want to do that." Despite her pleas, Wol continued to try to have sex with her. V.G. testified that she could feel Wol's erect penis on her leg. V.G. further testified that throughout the struggle, she tried to push Wol away from her while "telling him no."

2

Eventually, Wol got off of her and walked into another room. V.G. explained that after Wol walked into another room, she grabbed her phone and dialed 911. V.G. testified that before Wol left the apartment, Wol asked her if she was calling the police.

On cross-examination, V.G. admitted that it was possible that "based on [her experience with [Wol]," he might not have realized that she did not want to have sex. She further admitted that the incident "happened fairly quickly."

Officer Mills testified that when he initially spoke to V.G., V.G. told him that she struggled with Wol on the kitchen floor for about "3 to 4 minutes." Officer Mills further testified that V.G. told him that she was yelling loudly throughout the struggle because she had hoped that someone would hear her. An audio recording of Officer Mills' interview with V.G. was admitted into evidence, although this recording is not in the record on appeal. Based on Officer Mills' testimony about the interview, it is clear that Wol told Officer Mills the following during the interview: (1) he went over to the apartment to "have sex with [V.G.] by force"; (2) he continued to attempt to have sex with V.G. after she told him "no"; (3) he "'put[] [V.G.] on the ground'" after she told him "no"; and (4) he stopped attempting to have sex with V.G. "[b]ecause he didn't have an erection" anymore. When questioned on cross-examination, Officer Mills admitted that later in the interview, Wol denied going over to V.G.'s apartment to have sex with V.G. by force.

Wol presented no evidence on his own behalf. In his closing arguments, however, Wol asserted that his case was about "misperceptions." Wol emphasized V.G.'s testimony that he might not have realized that she was not consenting to sex. Based on this testimony, Wol argued that he could not have attempted to rape V.G. because he did not know that she was not consenting to sex. Wol also argued that his statements to the police

3

about going to V.G.'s apartment to have sex with V.G. by force resulted from the fact that English is his second language.

Ultimately, the jury found Wol guilty of attempted rape.

At sentencing, Wol moved for a durational departure, which the trial court granted. As a result, the trial court sentenced Wol to 36 months' imprisonment followed by lifetime postrelease supervision.

*Did the Trial Court Err in Answering the Jury's Question?*

Wol argues that the trial court erred when it responded to a question asked by the jury. Specifically, Wol takes issue with the trial court's decision to refer the jury to Instruction No. 10—the attempted rape elements instruction—when the jury asked what the law was on attempted rape. Wol believes that the trial court should have referred the jury not only to Instruction No. 10, but also to Instruction No. 9—the instruction that defined "intentionally" and "knowingly" as the culpable mental states required to commit an attempted rape. The State counters that the trial court's response was not erroneous because the jury asked for the law on attempted rape, and the attempted rape elements instruction contained the law on attempted rape. Alternatively, the State argues that any error that occurred was harmless.

*Standard of Review*

K.S.A. 2016 Supp. 22-3420(d) provides that "[t]he court shall respond to all questions from a deliberating jury in open court or in writing." When a party asserts the trial court's response to a jury's question was erroneous, appellate courts review the trial court's response for an abuse of discretion. *State v. Jones*, 41 Kan. App. 2d 714, 722, 205 P.3d 779 (2009). An abuse of discretion occurs when the trial court makes an error of

4

law, an error of fact, or an otherwise unreasonable decision. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). "[T]he crucial issue in reviewing a court's response to such a question is 'whether it was a correct statement of the law as applied to the facts brought out in the evidence.' [Citation omitted.]" *State v. Murdock*, 286 Kan. 661, 683, 187 P.3d 1267 (2008).

*Additional Facts*

During jury deliberations, the jury asked the trial court the following question: "What is the exact wording of the Kansas State laws on attempted rape?" The State proposed that the trial court refer the jury to Instruction No. 10, which stated:

"The defendant is charged with an attempt to commit rape. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant performed an overt act toward the commission of rape.

"2. The defendant did so with the intention to commit rape.

"3. The defendant failed to complete commission of rape.

"4. This act occurred on or about the 9th day of October, 2013, in Johnson County, Kansas.

"An overt act necessarily must extend beyond mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act.

"The elements of the completed crime of rape are as follows:

"1. The defendant knowingly engaged in sexual intercourse with [V.G.]

"2. [V.G.] did not consent to sexual intercourse.

"3. The sexual intercourse occurred under circumstances when [V.G.] was overcome by force or fear.

"4. This act occurred on or about the 9th day of October, 2013, in Johnson County, Kansas."

Wol proposed that the trial court refer the jury to all the jury instructions. The trial court decided to refer the jury to Instruction No. 10 of the jury questions. Despite the fact the court had made its decision, Wol requested that at the very least, the court should instruct the jury to look at both Instruction No. 10 and Instruction No. 9. Instruction No. 9 stated:

> "The State must prove that the defendant committed the crime intentionally.
>
> "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State.
>
> "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about or of the circumstances in which he was acting."

Despite Wol's secondary request, the trial judge still decided to refer the jury to only Instruction No. 10, tersely stating: "I can only refer you to Instruction No. 10." The trial court explained that based on its reading of the jury's question, the jury was actually requesting the language of the attempted rape statute, and it believed the statutory attempted rape language was contained in Instruction No. 10. Wol did not object to the trial court's response.

*Preservation*

Wol asserts that he has preserved this argument for appeal because his attorney argued that "simply referring the jury to instruction 10 was incomplete." The State notes that "[d]efense counsel asked that [the trial judge] refer the jury to Instruction 9" but made no objection.

Although the State has not alleged that Wol failed to preserve this argument for appeal based on the lack of objection, it must be noted that potential preservation issues

6

exist. Our Supreme Court has held "[a] defendant may waive the right to challenge the trial court's response to a jury request by failing to object." *State v. Smith*, 258 Kan. 321, 327, 904 P.2d 999 (1995). In *Jones*, this court held that whether a challenge to the trial court's response to a jury question had been preserved for appeal turns on whether "the defendant had an opportunity to voice any objections or to suggest a different response to a jury's question but remained silent or otherwise acquiesced in the trial court's course of action." 41 Kan. App. 2d at 720. Here, Wol and his attorney were both present when the trial court made its response to the jury question. Thus, Wol certainly had the opportunity to object.

Even so, it is readily apparent that Wol's attorney disagreed with the trial court's response. That is, it is clear that Wol did not acquiesce to the trial court's response because even after the court decided to refer the jury to only Instruction No. 10, Wol's attorney attempted to persuade the court to refer the jury to all of the instructions or at least Instruction Nos. 9 and 10. While it would have been better for Wol's attorney to explicitly object to the trial court's response to the jury instruction, the lack of acquiescence in conjunction with the fact that the State has not alleged that Wol failed to preserve his argument for appeal supports that Wol's argument is properly before this court. Accordingly, we will consider Wol's argument.

As the trial court noted below and the State emphasizes in its brief, by asking for the "*exact wording* of the Kansas State Laws on attempted rape," it is clear that the jury wanted the statutory language on attempted rape, which is found under K.S.A. 2013 Supp. 21-5503—the rape statute—and K.S.A. 2013 Supp. 21-5301—the attempt statute. There is no dispute that the jury could not be given the actual statutory language of K.S.A. 2013 Supp. 21-5503 and K.S.A. 2013 Supp. 21-5301 or that Instruction No. 10 somehow distorted the laws on attempted rape. Thus, Instruction No. 10, as the attempted rape elements instruction, contained all the relevant language from K.S.A. 2013 Supp.

7

21-5503 and K.S.A. 2013 Supp. 21-5301 that the jury needed to consider in determining if Wol committed an attempted rape.

Moreover, Wol's sole argument about not including the requisite culpable mental state language from Instruction No. 9 fails to take into account that the jury was instructed on all of the elements of attempted rape under Instruction No. 10. Indeed, Instruction No. 9 merely defined the meaning of the terms "with the intention to" and "knowingly" as used in Instruction No. 10. Therefore, despite Wol's argument to the contrary, the jurors were told that to convict him of attempted rape, they must believe he acted with the requisite culpable mental state.

Additionally, when considering arguments alleging error based on the lack of culpable mental state definitional instruction, this court has held that "[t]he fact that the court's instructions used the words 'intent' and 'knowingly' without defining them [did] not render the instructions defective" because jurors are supposed to be capable of deciphering the meaning of many difficult terms without their definitions. *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *4 (Kan. App. 2016) (unpublished opinion). Certainly, if the failure to give any instruction defining the requisite culpable mental state to commit a crime is not erroneous, the trial court's response referring the jury to the attempted rape elements instruction without reference to the culpable mental state definitional instruction was not error.

In short, the trial court answered the jury's question on the exact law on attempted rape in Kansas when it responded to the question by referring the jury to Instruction No. 10 of the jury instructions. Accordingly, the trial court's response to the jury question was appropriate.

*Harmless Error*

On the other hand, for the sake of argument, if the trial court's response to the jury instruction was improper, any error was harmless. Our Supreme Court has held that a trial court's response to a jury question, even if erroneous, may be deemed harmless if "it [did] not place any 'undue emphasis on either' guilt or innocence." *Murdock*, 286 Kan. at 683-84 (quoting *State v. Bell*, 266 Kan. 896, 920, 975 P.2d 239 [1999]). In this case, any error that resulted from the trial court's response to the jury's question was clearly harmless for three reasons.

First, the trial court's response in no way spoke to Wol's guilt or innocence. The trial court simply referred the jury to Instruction No. 10, which would have stated to the jury the exact wording of the attempted rape law. Therefore, the trial court's response to the jury did not require the jury to find Wol either guilty or not guilty.

Second, the trial court's response merely told the jury to look at Instruction No. 10 for answers regarding its question about the law on attempted rape. The trial court did not respond in a manner that would have indicated to the jury that it should look to only Instruction No. 10, ignoring all other instructions. Therefore, the jury was not told to consult Instruction No. 9 if it had questions regarding the meaning of the terms "with the intention to" and "knowingly" as used in Instruction No. 10. Thus, any error that resulted from the trial court's response to the jury's question had very little prejudicial effect.

Third, the evidence against Wol was very strong. Wol's main argument why the trial court's response was not harmless is that his defense was that he lacked the requisite culpable mental state to commit the attempted rape. As evidenced by his closing arguments, Wol's defense was that he lacked the requisite culpable mental state to commit the attempted rape. This is evident from his argument that what happened between him and V.G. was a misunderstanding because he did not know V.G. was not

9

consenting to sex. Yet, there is no dispute that Wol pushed V.G. to the ground, pulled up her skirt, and placed his erect penis on her leg as V.G. yelled "no" and struggled to push him away. The evidence presented at trial also supported that Wol stopped attempting to have sex with V.G. only after he no longer had an erection. Moreover, Wol's comment that he went over to V.G.'s apartment to have sex with her by force supports that it was his intent to rape V.G. if she refused consent. As a result, the arguments Wol made during closing arguments do not negate the substantial evidence supporting that he attempted to rape V.G. Because the evidence against Wol was overwhelming, any error that resulted from the trial court's response to the question was clearly harmless.

In conclusion, even if the trial court's response to the jury's question was error, the error was harmless because (1) the trial court's response did not speak to Wol's guilt or innocence, (2) the trial court's response did not discourage the jury from considering the other jury instructions, and (3) the evidence supporting Wol's guilt was overwhelming.

*Did the Trial Court Err by Sentencing Wol to Lifetime Postrelease Supervision?*

Wol next argues that his sentence of lifetime postrelease supervision is illegal, asserting that the 2013 amendments to K.S.A. 22-3717 required the trial court to sentence him to a term of months on postrelease supervision. Wol assets that both subparagraph (D) and (G) of K.S.A. 2016 Supp. 22-3717(d)(1) could apply to him under the plain language of those subparagraphs. Wol admits that subparagraph (G) requires defendants convicted of sexually violent crimes to serve lifetime postrelease supervision. Nevertheless, Wol contends that subparagraph (D) requires that the same defendants convicted of sexually violent crimes serve a term of months on postrelease supervision based on the severity level of the crime they committed. Given the severity level of Wol's attempted rape, his term of postrelease supervision under K.S.A. 2016 Supp. 22-3717(d)(1)(A) and (D) would be 36 months. Wol alleges that based on the the rule of lenity, the trial court was required to sentence him to 36 months' postrelease supervision

10

under subparagraph (D) instead of lifetime postrelease supervision under subparagraph (G).

The State contends that this court's recent decision in *State v. Herrmann*, 53 Kan. App. 2d 147, 153-54, 384 P.3d 1019 (2016), *petition for rev. filed* December 19, 2016, controls the outcome of this case as the *Herrmann* court rejected the exact argument Wol currently makes. In his reply brief, Wol recognizes that the *Herrmann* decision rejects his argument. All the same, he asserts that this court should decline to follow *Herrmann* because he believes it wrongly interpreted K.S.A. 2016 Supp. 22-3717(d)(1)(D) and (G).

*Standard of Review*

"Whether a sentence is illegal is a question of law over which an appellate court has unlimited review." *Herrmann*, 53 Kan. App. 2d at 149. To the extent Wol's challenge involves interpretation of statutes, this court exercises de novo review. *Herrmann*, 53 Kan. App. 2d at 150.

*K.S.A. 22-3717(d)(1) Background*

In 2006, the legislature amended K.S.A. 22-3717(d) to ensure that defendants convicted of sexually violent crimes must serve a term of lifetime postrelease supervision. See L. 2006, ch. 212, sec. 19. Then, in 2013, the legislature also enacted language under K.S.A. 22-3717(d)(1)(D) that stated certain defendants convicted of "sexually violent crimes" must serve a term of 12, 24, or 36 months on postrelease supervision. See L. 2013, ch. 133, sec. 13. Before the 2013 amendment, subparagraph (D) made no mention of defendants convicted of sexually violent crimes being sentenced to a term of months on postrelease supervision. See L. 2012, ch. 120, sec. 27. The relevant portions of K.S.A. 22-3717 as currently enacted states:

11

"(d)(1) Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows:

(A) Except as provided in subparagraphs (D) and (E), persons sentenced for nondrug severity levels 1 through 4 crimes, drug severity levels 1 and 2 crimes committed on or after July 1, 1993, but prior to July 1, 2012, and drug severity levels 1, 2 and 3 crimes committed on or after July 1, 2012, must serve 36 months on postrelease supervision.

. . . .

(D) Persons sentenced to a term of imprisonment that includes a sentence for a sexually violent crime as defined in K.S.A. 22-3717 . . . shall serve the period of postrelease supervision as provided in subsections (d)(1)(A), (d)(1)(B) or (d)(1)(C) plus the amount of good time and program credit earned and retained pursuant to K.S.A. 21-4722, prior to its repeal, or K.S.A. 21-6821, and amendments thereto, on postrelease supervision.

. . . .

(G) Except as provided in subsection (u), persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." K.S.A. 2016 Supp. 22-3717.

Herrmann *Background*

In *Herrmann*, Herrmann had committed an attempted aggravated indecent liberties with a child. The trial court sentenced Herrmann to lifetime postrelease supervision as stated under K.S.A. 2015 Supp. 22-3717(d)(1)(G). On appeal, Herrmann argued that the language within subparagraph (D) and (G) of K.S.A. 2015 Supp. 22-3717(d)(1) conflicted, meaning the court was required to impose the shorter term of postrelease supervision stated in subparagraph (D) under the rule of lenity.

12

The *Herrmann* court rejected this argument. In doing so, the *Herrmann* court held that the plain language of K.S.A. 2015 Supp. 22-3717(d)(1) established that defendants are either bound by the sentencing rules under subparagraph (D) *or* subparagraph (G); no defendants fall under the scope of both subparagraph (D) and subparagraph (G). 53 Kan. App. 2d at 152. In reaching this conclusion, the *Herrmann* court provided the following analysis:

"Subsection (d)(1) explains that persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow. Notably, however, this subsection (d)(1) expressly states that the mandatory postrelease supervision provided in the subparagraphs that follow do not apply to 'persons subject to subparagraph (G).' Subparagraph (G) provides that 'persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.' Herrmann was convicted of attempted aggravated indecent liberties with a child, which is a sexually violent crime under subsection (d)(5)(C) and (d)(5)(M). His conviction occurred after July 1, 2006. Because Herrmann is subject to subparagraph (G), no other subparagraph following subsection (d)(1) applies to him—including subparagraph (D).

    ". . . The provisions in each subparagraph apply to a distinct class of persons. K.S.A. 22-3717 as a whole applies to all persons convicted of a crime after July 1, 1993. See L. 1992, ch. 239, sec. 270 ('Persons sentenced for crimes committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence.'). Subparagraph (G) was added to the statute in 2006 to create an explicit exception applicable only for 'persons convicted of a sexually violent crime committed on or after July 1, 2006.' See L. 2006, ch. 212, sec. 19 (also adding language to [d][1] excepting 'persons subject to subparagraph [G]'). Reading subparagraph (D) in pari materia, it falls under subsection (d)(1) and so applies to all persons but those expressly excluded: persons sentenced for off-grid crimes committed on or after July 1, 1993, and persons committing a sexually violent crime on or after July 1, 2006, as stated in subparagraph (G). Therefore, subparagraph (D) only applies to persons convicted of a sexually violent

13

crime after July 1, 1993, but before July 1, 2006. Thus, there are no persons convicted of a sexually violent crime to whom both subparagraph (D) and subparagraph (G) apply. Construing the statute as a whole and giving effect to all of the statutes, as this court must, there is no conflict or ambiguity in amended subsection (d)(1).

". . . The 2013 amendments deleted the language pertaining to good-time and program credits from subparagraphs (A)–(C)—in effect, reducing the length of postrelease supervision sentences by not requiring those credits to be added to a person's postrelease term. But the legislature did not want to provide that same benefit for persons convicted of certain crimes, including sexually violent crimes. So, the legislature also amended subparagraph (D) to provide an exception for persons convicted of sexually violent crimes so that earned good-time and program credits continued to be added to their postrelease supervision period. L. 2013, ch. 133, sec. 13. In a nutshell, the postrelease supervision calculation for persons convicted of a sexually violent crime between July 1, 1993, and June 30, 2006, remained the same as it was prior to the 2013 amendments. 53 Kan. App. 2d at 152-54.

*Wol's Arguments*

Wol admits that an attempted rape constitutes a sexually violent crime as stated under subparagraph (G) of K.S.A. 2016 Supp. 22-3717(d). See K.S.A. 2016 Supp. 22-3717(d)(5)(A), (M). Wol also admits that if this court were to adopt the preceding analysis by the *Herrmann* court he would not be entitled to sentencing under subparagraph (D) given that he committed the attempted rape in October of 2013, which was well after the legislature enacted subparagraph (G)'s July 1, 2006, cut-off date. Nonetheless, Wol argues that the *Herrmann* court's interpretation of K.S.A. 2016 Supp. 22-3717(d)(1)(D) and (G) was incorrect.

Yet, Wol's arguments concerning the *Herrmann* court's analysis of K.S.A. 2015 Supp. 22-3717(d) are flawed. First, Wol's argument that the *Herrmann* court "ignore[d] that both subparagraphs (D) and (G) are placed under subsection (d)(1)" is simply meritless. The *Herrmann* court was clearly aware that it was analyzing sentencing

14

provisions that both fell under subsection (d)(1) of K.S.A. 2015 Supp. 22-3717. Moreover, Wol has made this argument without any explanation how the *Herrmann* court ignored that subparagraphs (D) and (G) fell under subsection (d)(1).

Second, Wol's next arguments fail to evaluate subparagraphs (D) and (G) within the broader context of K.S.A. 2016 Supp. 22-3717(d)(1). Wol argues that the plain language of K.S.A. 2016 Supp. 22-3717(d)(1)(G) does not state that defendants who fall under subparagraph (G) cannot fall under other subparagraphs of K.S.A. 2016 Supp. 22-3717(d)(1). Wol also argues that the plain language of K.S.A. 2016 Supp. 22-3717(d)(1) does not expressly state that defendants who committed sexually violent crimes after July 1, 1993, but before July 1, 2006, must be sentenced to a specific term of postrelease supervision under subparagraph (D) while defendants who committed sexually violent crimes after July 1, 2006, must be sentenced to lifetime postrelease supervision under subparagraph (G). Thus, Wol argues that the *Herrmann* court read language into K.S.A. 2015 Supp. 22-3717(d)(1) while determining that subparagraph (D) applied to only defendants who committed sexually violent crimes after July 1, 1993, but before July 1, 2006.

Nevertheless, Wol's arguments ignore that the *Herrmann* court construed K.S.A. 2015 Supp. 22-3717(d)(1) *in pari materia*, *i.e.*, it construed the statute as a whole not as individual subsections and subparagraphs. 53 Kan. App. 2d at 150. When one construes the statute as a whole, it is readily apparent that subparagraph (D) applies to defendants who committed sexually violent crimes on or after July 1, 1993, but before July 1, 2006. This is because (d)(1) states that the subparagraphs that follow apply to defendants who committed sexually violent crimes on after July 1, 1993, meaning subparagraph (D) applies to defendants convicted of sexually violent crimes on or after July 1, 1993. Subparagraph (G), however, explicitly states that it applies to all defendants who committed sexually violent crimes on or after July 1, 2006. Thus, subparagraph (G)'s language about defendants who committed sexually violent crimes on or after July 1,

2006, being sentenced to lifetime postrelease supervision modifies when subparagraph (D) applies; subparagraph (D) can apply to defendants who committed crimes on or after July 1, 1993, based off of the language in subsection (d)(1), but cannot apply to defendants who committed crimes on or after July 1, 2006, based on the language in subparagraph (G).

Consequently, when looking at K.S.A. 2016 Supp. 22-3717(d)(1) *in pari materia*, it is clear that the legislature intended that defendants who committed sexually violent crimes after July 1, 2006, be sentenced to lifetime postrelease supervision under subparagraph (G). Otherwise, why would the legislature have enacted subparagraph (G) in the first place? Indeed, to construe subparagraphs (D) and (G) in the manner that Wol has prescribed would render subparagraph (G) meaningless because all defendants who committed sexually violent crimes would be required to serve a term of months on postrelease supervision under (D). This construction would violate this court's rule against interpreting statutes in a manner that renders any provision meaningless. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).

Third, Wol's arguments concerning our Supreme Court's decision in *State v. Cameron*, 294 Kan. 884, 889-90, 281 P.3d 143 (2012), are unpersuasive. In *Cameron*, Cameron argued that under the rule of lenity, the trial court should have sentenced him to postrelease supervision under K.S.A. 22-3717(d)(1)(B) for his sexually violent crime convictions instead of under K.S.A. 22-3717(d)(1)(G). 294 Kan. at 889-90. K.S.A. 22-3717(d)(1)(B) stated that defendants convicted of nondrug severity level 5 or 6 crimes must serve a term of 24 months' postrelease supervision, while K.S.A. 22-3717(d)(1)(G) stated that defendants convicted of a sexually violent crime must serve lifetime postrelease supervision. Our Supreme Court rejected Cameron's argument, holding:

> "[W]hen we consider the provisions of K.S.A. 22-3717(d)(1) *in pari materia* with a view
> of reconciling and bringing the provisions into workable harmony there is no reasonable

16

doubt that the legislature intended *the more specific and more severe provision of (d)(1)(G) to apply* to a sentence imposed for a conviction of a sexually violent offense rather than the more general provision of (d)(1)(B) that Cameron seeks to apply. This means that an offender convicted of a 'sexually violent crime' committed after July 1, 2006, must be sentenced to receive lifetime postrelease supervision upon release from prison." (Emphasis added.) 294 Kan. at 900.

Wol asserts that the *Cameron* decision actually supports his argument that the *Herrmann* court incorrectly analyzed K.S.A. 2015 Supp. 22-3717(d)(1)(D) and (G), arguing "[t]he fact the *Cameron* court resolved [its reading of K.S.A. 22-3717] utilizing a rule of lenity analysis casts significant doubts whether the provisions of K.S.A. 22-3717(d)(1) and the interplay of the differing terms of postrelease supervision can truly be determined through a plain language requirement." Wol also asserts that by holding that K.S.A. 22-3717(d)(1)(G) was the more specific provision, our Supreme Court also found that "both subsections could be applicable."

Despite Wol's contention to the contrary, however, the *Cameron* court never used the rule of lenity. Instead, it determined that subparagraph (G) was the more specific subparagraph, meaning it was the only subparagraph of K.S.A. 22-3717(d)(1) applicable in Cameron's case. In fact, the *Cameron* court reached its decision by looking at the language under K.S.A. 22-3717(d)(1) *in pari materia* just like the *Herrmann* court. 294 Kan. at 900; 53 Kan. App. 2d at 153. More importantly, while our Supreme Court's analysis in *Cameron* may be instructive as to what cannons of statutory construction should be applied when considering K.S.A. 22-3717(d)(1), the *Cameron* court's analysis cannot speak to the meaning and purpose of the 2013 amendment to K.S.A. 22-2717(d)(1)(D) given that it had not been enacted when *Cameron* was decided in 2012. As thoroughly explained by the *Herrmann* court's legislative history of the 2013 amendment to subparagraph (D), the purpose of enacting subparagraph (D) was to ensure that defendants who committed sexually violent crimes between July 1, 1993, and July 1, 2006, did not receive the benefit of not having earned good time or program credit added

to their terms of postrelease supervision. 53 Kan. App. 2d at 153-54. Clearly, Wol has failed to consider the preceding in making his arguments about *Cameron*.

Last, although Wol requests that this court not adopt the *Herrmann* court's analysis of K.S.A. 2015 Supp. 22-3717(d)(1)(D) and (G), numerous other panels of this court have determined that the *Herrmann* court's analysis is correct. See, *e.g., State v. Brook*, No. 115,657, 2017 WL 1535138, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* June 17, 2017; *State v. Combs*, 115,638, 2017 WL 1296312, at *4 -6 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* May 8, 2017; *State v. Kness*, 115,480, 2017 WL 1295994, at *2 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* May 8, 2017; *State v. Fishback*, No. 114,797, 2016 WL 7031848, at *1 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* January 3, 2017.

Thus, to summarize, none of Wol's arguments are persuasive why the *Herrmann* court's analysis of K.S.A. 2015 Supp. 22-3717(d)(1)(D) and (G) are incorrect. As a result, we adopt the *Herrmann* court's analysis in rejecting Wol's argument that the trial court should have sentenced him to 36 months' postrelease supervision under K.S.A. 2015 Supp. 22-3717(d)(1)(D). Because Wol committed his crime after July 1, 2006, the trial court correctly sentenced Wol to lifetime postrelease supervision under K.S.A. 2015 Supp. 22-3717(d)(1)(G).

*Was the Imposition of Lifetime Postrelease Supervision Unconstituional?*

Finally, Wol raises a categorical challenge to lifetime postrelease supervision, alleging that lifetime postrelease sentences constitute disproportional punishment for all defendants convicted of committing attempted sex crimes. As a result, Wol alleges that his sentence of lifetime postrelease supervision for his attempted rape conviction violates the Eighth Amendment to the United States Constitution. The State responds that because

18

this court has rejected identical arguments before, this court should also reject Wol's current argument.

*Preservation*

Because categorical proportionality challenges involve questions of law, defendants are allowed to raise such challenges for the first time on appeal. See *State v. Williams*, 298 Kan. 1075, 1084, 319 P.3d 528 (2014); *State v. Gomez*, 290 Kan. 858, 866, 235 P.3d 1203 (2010). Thus, as asserted by Wol in his brief, we may consider Wol's categorical proportionality challenge even though he did not raise this argument below.

*Standard of Review*

Appellate courts apply an unlimited standard of review when considering defendants' categorical challenges to their sentences. See *Gomez*, 290 Kan. at 866.

*Categorical Proportionality Challenge Test*

The Eighth Amendment to the United States Constitution, which applies to the States through the Fourteenth Amendment, states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the United States Supreme Court determined that the proportionality of a sentence as to the crime committed is an integral part of the Eighth Amendment under the cruel and unusual punishment clause.

The United States Supreme Court held that categorical proportionality challenges to the length of a sentence "consists of two subsets, one considering the nature of the offense, the other considering the characteristics of the offender." 560 U.S. at 60. Here,

Wol challenges that nature of the offense by asserting that lifetime postrelease supervision constitutes disproportionate punishment for all defendants convicted of attempted sex crimes. When reviewing such challenges, the United States Supreme Court explained that courts must engage in a two-step test:

"The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Graham*, 560 U.S. at 61.

Of note, under this second step, courts should also consider (1) whether the imposition of the sentence is appropriate as to the defendant based on the defendant's crimes and characteristics and (2) whether the sentence serves legitimate penological goals. *Graham*, 560 U.S. at 67. Retribution, deterrence, incapacitation, and rehabilitation constitute legitimate penological goals. *Graham*, 560 U.S. at 71.

Barrera *and* Reed—*National Consensus Background*

Wol challenges the imposition of lifetime postrelease supervision on defendants who have committed attempted sex crimes generally, as opposed to his specific crime – attempted rape. In doing so, Wol requests that this court reconsider its prior holding in *State v. Reed*, 51 Kan. App. 2d 107, 341 P.3d 616 (2015), *rev. denied* 304 Kan. 1021 (2016), that "lifetime postrelease supervision [is] not unconstitutionally disproportionate for attempted crimes." Although Wol has not addressed this court's decision in *State v. Barrera*, No. 104,667, 2013 WL 517581, at *9-10 (Kan. App. 2013) (unpublished

opinion), *rev. denied* 297 Kan. 1248 (2013), a review of *Barrera* is additionally required to fully understand the *Reed* decision and to address Wol's arguments on appeal.

In *Barrera*, Barrera raised a categorical proportionality challenge to lifetime postrelease supervision for his specific conviction of attempted rape. Barrera first argued that there was a national consensus against mandatory lifetime postrelease supervision for defendants who committed attempted rapes, pointing out that only Kansas and one other state have enacted mandatory lifetime postrelease supervision for attempted rape. The *Barrera* court rejected Barrera's argument based on an examination our Supreme Court's decisions in *State v. Mossman* 294 Kan. 901, 929, 281 P.3d 153 (2012), and *Cameron*. 2013 WL 517581, at *9.

The *Mossman* decision involved whether lifetime postrelease supervision was categorically disproportionate when imposed on defendants convicted of aggravated indecent liberties with a child. 294 Kan. at 929-30. The *Cameron* decision, on the other hand, involved whether lifetime postrelease supervision was categorically disproportionate when imposed on defendants convicted of aggravated indecent solicitation of a child. 294 Kan. at 897-98. Nevertheless, in both *Mossman* and *Cameron*, our Supreme Court adopted the position of the Ninth Circuit Court of Appeals in *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir.), *cert. denied* 565 U.S. 856 (2011), that lifetime postrelease supervision for any adult defendant convicted of committing a sex crime is allowable. *Cameron*, 294 Kan. at 897-98; *Mossman*, 294 Kan. at 929-30.

The *Barrera* court explained the significance of our Supreme Court's adoption of the *Williams* court's analysis regarding lifetime supervision as follows:

> "Our Supreme Court has adopted the Ninth Circuit Court of Appeals' position in
> [*Williams*], in which the Ninth Circuit examined a categorical challenge to a sentence of
> lifetime postrelease supervision for a conviction of receipt of child pornography:

""'[O]bjective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders, as such sentences are common."' [Citations omitted.] In both *Mossman* [294 Kan. 901, 929, 281 P.3d 153 2012,] and *Cameron*, our Supreme Court quoted this language and applied the Ninth Circuit's reasoning. [Citations omitted].

"Although both the *Mossman* and *Cameron* courts specifically identified the category at issue to be identical with the crime of conviction, the application of *Williams* to both Mossman['s] and Cameron's cases means that our Supreme Court is truly analyzing the category even more broadly—as 'sex offenses.' This is the only way in which the three crimes at issue in the three cases—aggravated indecent liberties with a child, aggravated indecent solicitation of a child, and receipt of child pornography—can undergo identical analysis for a categorical proportionality challenge under the Eighth Amendment. Moreover, our Supreme Court considered that 'several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes.' [Citations omitted.] This statement, identical in both opinions, reinforces the belief that the category of offense actually being considered was 's*exually violent crimes' as a whole, not each crime individually*.

"Here, Barrera was convicted of attempted rape, which is also a sexually violent crime. See K.S.A. 2011 Supp. 22-3717(d)(2). Therefore, the *Williams* analysis applies here as it did in *Mossman* and *Cameron*. As these three opinions note, objective indicia suggest that *there is no national consensus against lifetime postrelease supervision for perpetrators of sexually violent crimes; rather, it seems to be a widespread phenomenon. Objective indicia indicate now, as in Mossman, Cameron, and Williams, that 'society is comfortable with lifetime sentences of supervised release for sex offenders.'* [Citations omitted.]" (Emphasis added.) 2013 WL 517581, at *9.

In *Reed*, Reed argued that imposition of lifetime postrelease supervision for attempted indecent touching crimes was categorically disproportionate when imposed on defendants who committed attempted aggravated indecent liberties with a child. Reed argued that there was a national consensus against imposing lifetime postrelease supervision on defendants convicted of attempted indecent touching crimes because only Kansas and one other state imposed lifetime postrelease supervision for first time attempted sex crimes. *Reed*, 51 Kan. App. 2d at 111. Yet, the *Reed* court rejected this

argument because many other panels of this court have held that the lifetime postrelease supervision was constitutional when imposed on defendants who committed attempted sex crimes, in part, because no national consensus against such sentences existed. 51 Kan. App. 2d at 112-13. In doing so, the *Reed* court emphasized this court's decision in *Barrera*, quoting the *Barrera* court's analysis on *Mossman*, *Cameron*, and *Williams*. 51 Kan. App. 2d at 112-13.

*No National Consensus Against Lifetime Postrelease Supervision*

Turning our attention again to Wol's arguments, we note that Wol believes that this court should reconsider *Reed* because the *Reed* court improperly "lumped convictions for less severe sex offenses, such as sexual battery, with far more severe offenses like rape and child pornography" when deciding that a national consensus against attempted sex crimes did not exist. Wol even asserts that based on the *Reed* court's holding, "the sentence of life in prison for battery would not be unconstitutional looking at battery not as battery, but as a 'violent offense.'" This interpretation of *Reed*, however, is entirely unsupported.

To begin with, *Reed* was dealing specifically with the imposition of lifetime postrelease supervision on defendants convicted of attempted sex crimes. Stretching the *Reed* court's ruling upholding lifetime postrelease supervision for defendants convicted of attempted sex crimes to somehow allow lifetime prison sentences for defendants convicted of battery does not make sense and is unfounded. Further, the *Reed* court determined that no national consensus against the imposition of lifetime postrelease supervision for attempted sex crimes existed based on this court's analysis in *Barrera*. 51 Kan. App. 2d at 113. And, the *Barrera* court had determined that no national consensus against the imposition of lifetime postrelease supervision for an attempted rape existed based on its analysis of our Supreme Court's decisions in *Mossman* and *Cameron*, which

23

adopted the Ninth Circuit's holding in *Williams* that society has approved of lifetime supervision for sex crimes defendants. 2013 WL 517581, at *9.

Thus, to the extent the *Reed* court "lumped" all sex crimes together when considering whether a national consensus existed, it did so because our Supreme Court's past analysis in *Mossman* and *Cameron* supports that our Supreme Court has broadly determined that there is no national consensus against lifetime postrelease supervision for defendants convicted of any sex crime, regardless of whether the sex crime had been completed or only attempted. *Reed*, 51 Kan. App. 2d at 112-13. Moreover, our Supreme Court's denial of the petitions for review filed in both *Reed* and *Barrera* strongly indicate that the *Barrera* court's interpretation of our Supreme Court's analysis in *Mossman* and *Cameron* was correct. See *Reed*, *rev. denied* 304 Kan. 1021 (2016); *Barrera*, *rev. denied* 297 Kan. 1248 (2013).

*Lifetime Postrelease Supervision serves Legitimate Penological Goals*

Next, Wol seems to make two arguments why this court should find his lifetime postrelease supervision sentence unconstitutional under the second step of the categorical proportionality test. First, Wol asserts that the fact the trial court gave him a durational departure should be considered. Outside of mentioning that this court should consider that he was given a durational departure, however, Wol has not explained why this supports his argument that his sentence of lifetime postrelease supervision constitutes cruel and unusual punishment. That is, Wol has not explained what characteristics about him personally makes his sentence of lifetime postrelease supervision cruel and unusual punishment. A point raised incidentally in a brief and not argued therein is deemed abandoned by this court. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Here, Wol has raised this argument incidentally and has therefore abandoned it.

24

Wol's remaining argument is that lifetime postrelease supervision does not serve legitimate penological goals. In support of this argument, Wol asserts that lifetime postrelease supervision fails to serve legitimate penological goals for following reasons: (1) because an attempt is a less severe crime than a completed crime, meaning "the need for retribution is considerably less than in cases involving a completed criminal offense"; (2) because lifetime postrelease supervision undermines a defendant's ability to rehabilitate himself or herself; (3) because lifetime postrelease supervision does not truly prevent recidivism; and (4) because a prison sentence sufficiently deters a defendant from recidivism.

Nevertheless, none of these assertions are persuasive. First, as held in in *State v. Hindman*, No. 110,261, 2014 WL 5312925, at *6-7 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015), "offenders who are guilty of attempting to commit a crime still have the intent required to commit it, so the penological objectives for lifetime postrelease supervision are the same whether the offender has committed a sexually violent crime or attempted one but did not complete it." 2014 WL 5312925, at *7. Thus, Wol's argument that the need for retribution is less because his crime was not completed is unconvincing.

Next, although this court has previously held that any deterrent effect from the imposition of lifetime postrelease supervision is not sufficient in and of itself to support the punishment, when other legitimate penological goals exist, this court has determined that the punishment may be upheld. *Barrera*, 2013 WL 517581, at *10. In regards to rehabilitation and recidivism, in *Mossman* and *Cameron*, our Supreme Court determined that lifetime postrelease supervision served the important penological goals of rehabilitation and incapacitation. *Mossman*, 294 Kan. at 930; *Cameron*, 294 Kan. at 898. The *Mossman* court emphasized that rehabilitation and incapacitation are particularly important because of the high rate of recidivism with sex offenders. 294 Kan. at 930.

25

Moreover, this court has consistently adopted the *Mossman* and *Cameron* court's findings about the legitimate penological purposes of lifetime postrelease supervision for attempted sex crimes. See, *e.g.*, *Reed*, 51 Kan. App. 2d at 114; *State v. Malmstrom*, No. 114,794, 2016 WL 5867240, at *11 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* October 25, 2016; *State v. Long*, No. 111,720, 2015 WL 2136628, at *11 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1020 (2016); *Hindman*, 2014 WL 5312925, at *6-7; *State v. Russell*, No. 107,588, 2013 WL 3867180, at *4-6 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014), *Barrera*, 2013 WL 517581, at *10.

Therefore, Wol's lifetime postrelease sentence is not a categorically disproportionate sentence when compared to his conviction of attempted rape. In turn, his sentence of lifetime postrelease supervision is not cruel or unusual punishment under the Eighth Amendment.

Affirmed.